NOTICE

Decision filed 03/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210375-U

NO. 5-21-0375

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| PATRICK FERRARI and BARBARA FERRARI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-SC-2309 |
| | ) | |
| THE VILLAGE OF GLEN CARBON, | ) | Honorable |
| | ) | Thomas W. Chapman, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the appellants failed to provide a record adequate to allow us to review their claims, we presume that the trial court correctly applied the law and that the missing portions of the record would have supported the court's rulings. Where the appellants' claim of judicial bias is based upon statements the court allegedly made that do not appear in the limited record and upon allegedly erroneous rulings, the appellants cannot overcome the presumption that the trial judge was fair and impartial. Where the court ruled in favor of the appellants, we conclude that any error did not result in prejudice to them.

¶ 2    The plaintiffs, Patrick and Barbara Ferrari, filed a *pro se* small claims complaint against the defendant, the Village of Glen Carbon, alleging that a commercial mower hired by the defendant entered onto their property to mow their yard and damaged Barbara Ferrari's vehicle. At trial, they presented evidence that the defendant charged them $525 for the mowing and placed a lien on their property for that amount when they refused to pay it. The court ruled in the plaintiffs'

1

favor and awarded them damages for the cost of repairing the vehicle and for the loss of its use. The court did not award damages for the cost of mowing or order the lien removed. On appeal, the plaintiffs argue that the court (1) erred by refusing to allow further cross-examination of one of the defendants' witnesses after redirect examination, (2) exhibited a bias in favor of the defendant, and (3) engaged in an improper *ex parte* communication with the defendant's attorney. The plaintiffs contend that these errors resulted in the court's decision not to award them $525 for the cost of mowing and additional unspecified damages for trespass. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4      On August 31, 2018, the defendant's employee, Jamie Foster, sent a letter to the plaintiffs informing them that they were required to mow the grass on their four-acre property to comply with an ordinance of the Village of Glen Carbon. Patrick Ferrari discussed the matter with Foster by telephone, explaining to her that he had not cut his grass because his mower was broken. Foster gave the plaintiffs an extension until the end of October 2018 to cut their grass. However, on September 28, a commercial mower hired by the Village of Glen Carbon entered the plaintiffs' property and cut their grass. While attempting to turn the mower, the individual driving it struck and damaged Barbara Ferrari's vehicle.

¶ 5      At some point, the plaintiffs were billed for the mowing company's services. Because they did not pay the bill, the Village of Glen Carbon placed a "weed lien" on their property in the amount of $525. This amount includes the $450 billed by the contractor, Full Spectrum Outdoor Services, Inc. (Full Spectrum) along with late fees and administrative fees. The plaintiffs received a letter warning them of the possibility of a lien in May 2019, before they filed the instant complaint, but it does not appear that they received notice that the lien had been recorded until October or November of 2019, while this matter was pending.

¶ 6     On July 19, 2019, the plaintiffs filed a *pro se* small claims complaint against the Village of Glen Carbon and the Glen Carbon Police Department. They filed four other small claims complaints against the Village of Glen Carbon and related entities on or around the same date. In their complaint in this case, the plaintiffs alleged only that the commercial mower hired by the defendants entered their property without permission and struck Barbara Ferrari's vehicle, causing damage. They requested a total of $4230.62 in damages, representing $3880.62 for the repair of the vehicle and $350 for the loss of its use while it was being repaired. The complaint contained no allegations or requests for relief related to the mowing bill.

¶ 7     On September 3, 2019, the defendants filed a motion to dismiss the plaintiffs' complaint, and on September 4, they filed an amended motion to dismiss. They alleged that the plaintiffs' complaint did not identify any acts or omissions by the named defendants or their employees "beyond failing to supervise the actions of a 'commercial mower.' " They argued that, as such, the conduct of individual employees was immune from liability under section 2-204 of the Local Governmental and Local Governmental Employees Tort Immunity Act (745 ILCS 10/2-204 (West 2016)) and that this immunity extended to the entities named as defendants under section 2-109 of the same act (*id.* § 2-109). In addition, the defendants argued that the complaint failed to state a claim against the Glen Carbon Police Department because it did not make any allegations concerning conduct by any employees of the police department. We note that although the court did not rule on the motion directly, the court addressed the issue of immunity in its final judgment.

¶ 8     On January 8, 2020, the plaintiffs filed a motion asking the court to set a trial date in this matter as soon as possible. On February 3, 2020, the court entered an order setting this and the four other pending small claims cases involving the same parties for a nonjury trial on May 1, 2020. On February 5, the plaintiffs filed a motion asking the court to set this case "as a separate

stand-alone *jury trial*." (Emphasis in original.) The defendants filed a response to that motion on February 18, arguing that the plaintiffs waived their right to a jury by failing to request a jury trial in their complaint, and that a jury trial would cause considerable inconvenience and expense to the defendants. In response to the plaintiffs' request for a separate trial in this matter, the defendant noted that although the court had scheduled hearings in all five pending cases for the same day, the matters had not been consolidated. The following day, the plaintiffs filed an additional motion, applicable to all pending cases, requesting separate trial dates in each.

¶ 9    Pending motions in all five cases came for a hearing on March 12, 2020. At that hearing, the plaintiffs voluntarily dismissed their claims against the Glen Carbon Police Department. The court granted the plaintiffs' request for a jury trial in one of the pending cases but set the remaining four cases—including this one—for a nonjury trial on the same day.

¶ 10    After multiple delays, these matters proceeded to trial on July 30, 2021. The plaintiffs introduced into evidence several photographs showing the damage to Barbara Ferrari's vehicle along with other exhibits pertinent to this case. These exhibits included Foster's August 31, 2018, letter informing the plaintiffs that they were required to cut their grass by September 14, 2018, and keep it mowed to a height of less than eight inches to comply with the requirements of village ordinances.

¶ 11    Another pertinent exhibit was a copy of Jamie Foster's notes documenting a telephone conversation she had with Patrick Ferrari on September 12, 2018. Foster's notes indicate that Ferrari admitted to her that he had not cut his grass in 1½ months and explained that this was because his mower was broken. He told her he would attempt to rent a bush hog that weekend, but he would be unable to cut the grass before the September 14 deadline. A handwritten statement signed by Patrick Ferrari appears underneath Foster's typed notes. The statement indicates that

4

Foster agreed to an extension, giving the plaintiffs until October 31, 2018, to comply. We note that, although the record on appeal does not include any of Foster's trial testimony, the trial court mentioned in its order that Foster testified she granted the plaintiffs an extension until the end of October.

¶ 12     The record also includes (1) a copy of the pertinent Village of Glen Carbon ordinances, (2) a police report detailing the plaintiffs' description of the incident in which the vehicle was damaged by the mower, and (3) an estimate from an auto body repair shop showing that the cost to repair Barbara Ferrari's damaged vehicle would be $3880.62. In addition, the record contains a May 2019 letter informing the plaintiffs that they had until June 10, 2019, to pay Full Spectrum's bill or a lien would be placed on their property. The final pertinent exhibit is a November 2019 letter informing the plaintiffs that a "weed lien" in the amount of $525 had been placed on their property due to their failure to pay the mowing bill. Attached to the letter was a notice of lien dated October 28, 2019.

¶ 13     The plaintiffs have not provided this court with a complete transcript of the hearing. Instead, they have provided us with an 18-page excerpt. The excerpt begins at the end of the plaintiffs' cross-examination of Village Streets Superintendent Daniel Lawrence. Acting as his own attorney, Patrick Ferrari asked Lawrence whether the Village of Glen Carbon usually grants an extension to a resident "when there is an extenuating circumstance or the ordinance requires a tremendous amount of work or a tremendous amount of expense to get into compliance." Lawrence replied, "I've heard of a few, yes, sir." Ferrari then asked, "But once when—you realize that when I was granted an extension by the officer that wrote the memo, that Mr. Coody ignored it and told

5

them to mow anyway?"[1] Lawrence replied, "That was his discretion, sir." Ferrari then stated, "Okay. Thank you. I can't think of anything else, Your Honor."

¶ 14 The defendant's counsel, Catherine Schwarze, then began her brief redirect examination. Pertinent to this case, she asked:

"Mr. Lawrence, earlier Mr. Ferrari was asking you about these documents such as the letter sent to him [on] August 31 regarding the tall grass and the bill from Full Spectrum indicating the date it was mowed. Do you have any reason to believe that those documents don't mean what they—what's written on them?"

Lawrence responded, "Absolutely none, no." Schwarze then asked him whether there were dates on the photographs admitted into evidence. Lawrence testified that there were no dates on the photographs. We note that the record contains photographs of the damage to Barbara Ferrari's vehicle as well as photographs related to the other cases tried on the same day as this one. We presume the question referred to all the photographs, including those pertinent to this case. The remainder of Schwarze's redirect examination related to other cases.

¶ 15 Next, the court questioned Lawrence. None of the court's questions related to this case. When the court finished its examination, the following exchange occurred:

"THE COURT: Alright. Thank you very much for your time. We've spent all day. Thank you.

MR. FERRARI: I have cross-examination.

THE COURT: We are out of time today. I do have a couple of observations.

---

[1]We note that the record in a separate appeal currently pending before us involving the same parties contains a pleading indicating that David Coody was Jamie Foster's supervisor when the events at issue transpired and that he overrode her decision to grant the plaintiffs an extension. See *Bush v. J&J Transmissions, Inc.*, 2017 IL App (3d) 160254, ¶ 11 (noting that we take judicial notice of court records in other cases); *Auto-Owners Insurance Co. v. Konow*, 2016 IL App (2d) 150823, ¶ 5 (same).

6

MR. FERRARI: I do have—

THE COURT: I'm sorry. You can't say that you haven't had a fair and decent hearing in terms of time.

MR. FERRARI: She brought up questions—

THE COURT: The Court has to exercise its discretion with respect to the management of the court time. And I have a couple of questions for you in order to sort it out. So it's been—instead of [closing argument], I would appreciate if you would give me the opportunity to ask you two a couple of questions of it. Is that fair?

MR. FERRARI: Yes, sir.

MS. SCHWARZE: Yes, Your Honor."

The excerpt from the transcript ends after this exchange.

¶ 16     On October 28, 2021, the court entered a detailed written order containing its findings. The court first considered the applicability of the Local Governmental and Local Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2016)). The court noted that counsel for the defendant did not cite two provisions of that act which "seem[ed] relevant given the allegations of the complaint." Those provisions were section 2-202, which provides immunity for acts or omissions involving the exercise of discretion (see *id.* § 2-202), and section 2-209, which provides immunity for local governmental employees who enter the property of another "where such entry is expressly or impliedly authorized by law" (see *id.* § 2-209). The court then noted that the defendant "was on the right track, though, when it cited to [section] 2-204." That statute provides that "a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." *Id.* § 2-204.

7

¶ 17    The court explained that in most cases, section 2-204 would apply and provide immunity from liability to municipal employees and entities for the actions of third parties such as the contractor, Full Spectrum. The court found that provision to be inapplicable in the instant case, however, for four reasons.

¶ 18    First, the court found that the contractor entered the plaintiffs' property at the direction of the Village of Glen Carbon. The court explained that under common law principles of tort law, a defendant may be liable for trespass if it is directed by that party. See *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 556-57 (1980); *Schweihs v. Chase Home Finance LLC*, 2021 IL App (1st) 191779, ¶ 30.

¶ 19    Second, the court found that the entry onto the plaintiffs' property to cut their grass was not authorized by local ordinances. The court found that the plaintiffs' property was rural or semi-rural and explained that an ordinance "requiring a rural or semi-rural resident to mow all his ground becomes problematic under a purely aesthetic justification." Although the court noted that a local ordinance required grass on rural properties to be cut if it posed a fire hazard, the court found that there was no evidence in this case that the plaintiffs' grass constituted a fire hazard or raised any other safety concerns.

¶ 20    Third, the court found that there was procedural unfairness in granting the plaintiffs an extension until the end of October and then sending in a mowing crew prior to that time without notice. Because of this unfairness, the court found that the entry was "neither expressly nor impliedly authorized by law."

¶ 21    Fourth, the court found that, even assuming the defendant had a privilege to enter the plaintiffs' property to abate a nuisance (or to direct a third party to do so), such privilege "must be exercised in a reasonable manner." The court further explained that any intentional, reckless, or

negligent harm beyond that necessary to abate the nuisance is subject to liability. See Restatement (Second) of Torts § 201 (1965).

¶ 22    The court found in favor of the plaintiffs and awarded them damages of $4230.62. As we stated earlier in this order, that was the amount requested by the plaintiffs in their complaint. The court did not address the question of the contractor's bill or the lien. This appeal followed.

¶ 23                                              II. ANALYSIS

¶ 24    On appeal, the plaintiffs argue that the court erred by not permitting recross-examination of Lawrence. In addition, they argue that the court exhibited a bias in favor of the defendant and engaged in *ex parte* communications with the defendant's attorney. We reject these contentions.

¶ 25                                          A. Cross-Examination

¶ 26    The plaintiffs first contend that the court denied them the right to cross-examine Lawrence after redirect examination and denied them the right to introduce into evidence records that would have proven some of his testimony was false. In response to these arguments, the defendant contends that (1) the court did not abuse its discretion in limiting the cross-examination of Lawrence, (2) the plaintiffs forfeited this argument by failing to object at trial, and (3) the plaintiffs cannot demonstrate that they were prejudiced by the court's ruling because the court ruled in their favor. We find that the plaintiffs did not forfeit this claim, but we otherwise agree with the defendant.

¶ 27    As the defendant correctly points out, a party forfeits appellate review of any errors if the party does not object at trial. See *Sinclair v. Berlin*, 325 Ill. App. 3d 458, 467 (2001). We agree with the defendant that the plaintiffs forfeited any claims regarding the documentary evidence. They acknowledge that they only attempted to present this evidence after trial as attachments to various posttrial motions they filed. However, we do not believe they forfeited their arguments

9

concerning cross-examination. As previously discussed, Patrick Ferrari requested an opportunity to conduct further cross-examination of Lawrence after redirect examination and questioning by the court. When told he could not do so, Ferrari specifically stated that the defendant's attorney raised questions during redirect examination. Although he did not use the word "objection," he drew the issue to the court's attention. As such, we find that the plaintiffs preserved the issue of cross-examination for appellate review. We therefore turn our attention to the merits of their contentions.

¶ 28    The scope and extent of cross-examination are matters within the trial court's sound discretion. *Adams v. Sarah Bush Lincoln Health Center*, 369 Ill. App. 3d 988, 998 (2007). On appeal, we will not reverse absent a clear abuse of the court's discretion that resulted in manifest prejudice to the appellant. *Id.* An abuse of discretion occurs only when the trial court acts arbitrarily, fails to use conscientious judgment, exceeds the bounds of reason, and ignores recognized principles of law or when no reasonable person could take the position adopted by the trial court. *Id.* at 1000.

¶ 29    In determining whether the court has abused its discretion in this case, we must also emphasize that it was the plaintiffs' duty, as the appellants, to provide us with a record on appeal adequate to resolve their claims. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007). If there are gaps in the record that could materially affect our decision, we must resolve any doubts created by those gaps against the appellants. *Id.*

¶ 30    In support of their contention that the court erred by declining to allow further cross-examination of Lawrence, the plaintiffs assert that they were unable to counter testimony that (1) the Village of Glen Carbon gave them proper notice before sending a commercial mower to cut their grass, (2) the mowing was done in accordance with applicable ordinances, and (3) the

work was performed under supervision. They argue that if they had been given the opportunity to cross-examine Lawrence further, the court "would have certainly decided differently and probably in [their] favor to remove [the] $525 Property Lien and award Trespass damages." We reject these contentions for two reasons.

¶ 31    First, the record does not demonstrate that the court prevented the plaintiffs from cross-examining Lawrence about the testimony they have identified on appeal at all, much less that the court abused its discretion. Although the excerpt from the transcript included in the record on appeal is brief, it includes the defendant's entire redirect examination of Lawrence. Lawrence did not testify during redirect that the plaintiffs were given proper notice, that the mowing was done in accordance with applicable ordinances, or that the mowing was performed under appropriate supervision. If he provided such testimony, he could only have done so during direct examination or during the plaintiffs' earlier cross-examination. As discussed previously, Patrick Ferrari was permitted to cross-examine Lawrence until he could think of no further questions to ask. Thus, on the record before us, there is no indication that the plaintiffs were prevented from questioning Lawrence on any of these topics. To the extent that the gaps in the record leave any doubt, we must resolve that doubt against the plaintiffs, as appellants, and presume that the missing portions of the record supported the court's ruling. See *id.* On the record before us we can find no abuse of discretion.

¶ 32    Second, even assuming the court erred, the plaintiffs were not prejudiced by its ruling. Reversal based on an evidentiary ruling is only warranted if the asserted error resulted in substantial prejudice and affected the outcome of the trial. *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 848 (2010). "The party seeking reversal bears the burden of establishing such prejudice." *Id.*

11

¶ 33    Here, the trial court found in favor of the plaintiffs and awarded them damages in the amount of $4230.62, the amount they requested in their complaint. The plaintiffs nevertheless argue, in essence, that they were prejudiced because they did not receive unspecified additional damages for trespass. We disagree. A party is liable for trespass if that party intentionally intrudes on the property of another, even without proof of actual harm to the property. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 76. Absent proof of actual harm, the property owner is entitled to nominal damages. *Id.* ¶ 77. However, the plaintiffs do not cite any authority to support the proposition that a party who proves actual harm and recovers damages for that harm is entitled to additional damages, and we are aware of no such authority.

¶ 34    The plaintiffs also argue that because of the court's ruling, they were not awarded any relief related to the $525 "weed lien" placed on their property. Although the record does contain evidence related to the bills the plaintiffs received for the mowing services and the lien placed on their property as a result of their failure to pay those bills, there is no indication in the record before us that the plaintiffs ever requested or demonstrated that they were entitled to additional relief related to the bills or the lien. For these reasons, the plaintiffs are unable to satisfy their burden of demonstrating that they were prejudiced by the court's alleged error in limiting cross-examination. As such, reversal would not be warranted even if we found that the court abused its discretion.

¶ 35                    B. Judicial Bias and *Ex Parte* Communication

¶ 36    The plaintiffs next contend that the court demonstrated that it was biased against them and in favor of the defendant and that the court engaged in an improper *ex parte* conversation with the defendant's attorney. We consider these claims together because they are factually intertwined.

¶ 37    The plaintiffs assert that the court demonstrated its bias in favor of the defendant in three ways. They first allege that the court briefly paused the trial "to openly and freely" give legal

12

advice to the defendant's attorney, Catherine Schwarze, and to suggest a "new, or alternate, legal strategy" to her. Second, they allege that the court further demonstrated its bias by engaging in an *ex parte* conversation with Schwarze at the end of the trial, telling her that she would be given time to file written arguments with the court. They allege that this was witnessed by Jamie Foster and both plaintiffs. Third, the plaintiffs contend that the trial judge "acted as the Defense Attorney himself" when he "continued to cite [section] 2-209 as a defense argument" after repeatedly mentioning that the defendants did not cite that provision.

¶ 38     The plaintiffs argue that the court ran afoul of Judicial Canon 3(A)(5) and (A)(9) (Ill. S. Ct. R. 63(A)(5), (A)(9) (eff. Dec. 16, 2020)) by demonstrating bias and engaging in an *ex parte* communication. They further contend that the court's bias led to "incorrect conclusions," and that "[t]here should have been a Criminal Trespass and Criminal Damage to Property Award." We reject these contentions for two reasons.

¶ 39     First, the record does not support the plaintiffs' allegations. There is no evidence in the record that the court interrupted the trial to give Schwarze legal advice or that the court engaged in any improper *ex parte* discussions. As we have already explained, doubts created by gaps in the record must be resolved against the plaintiffs as appellants. *Midwest Builder Distributing*, 383 Ill. App. 3d at 655. Although the trial court did mention in its order that section 2-209 of the Local Governmental and Local Governmental Employees Tort Immunity (745 ILCS 10/2-209 (West 2016)) had potential application to this case, the court explicitly found that no immunity provisions applied and entered judgment in favor of the plaintiffs. Thus, the record is inadequate to support the plaintiffs' first two allegations of judicial bias and actually refutes their third allegation.

¶ 40     Second, trial judges are presumed to be fair and impartial. It is the burden of the party alleging judicial bias to overcome this presumption. *Eychaner v. Gross*, 202 Ill. 2d 228, 280

13

(2002). This requires "evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Id.* Allegedly erroneous adverse rulings are not sufficient to demonstrate bias. *Id.* Here, the plaintiffs have made vague allegations concerning the court's interactions with opposing counsel that are not supported by the record and have argued that the court further demonstrated bias by erroneously relying on a statutory provision not cited by the defendant. This is insufficient to overcome the presumption that the trial judge was fair and impartial.

¶ 41 Finally, it is worth reiterating that the court ruled in the plaintiffs' favor and awarded them all the damages they sought. Although the plaintiffs claim that they should have been awarded damages for criminal trespass, this is a civil suit and, as discussed earlier, they *were* awarded damages for trespass. Ordinarily, in cases such as this involving harm to property that can be repaired, the measure of damages for trespass is the cost of repair. See, *e.g.*, *First Baptist Church of Lombard v. Toll Highway Authority*, 301 Ill. App. 3d 533, 545 (1998); *Wujcik v. Gallagher & Henry Contractors*, 232 Ill. App. 3d 323, 329-30 (1992); *Rodrian v. Seiber*, 194 Ill. App. 3d 504, 509 (1990). Here, the plaintiffs were awarded damages for the cost of repairing the damaged vehicle and for the loss of use of the vehicle while it was being repaired.

¶ 42                                III. CONCLUSION

¶ 43 For these reasons, we affirm the trial court's judgment.

¶ 44 Affirmed.